UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNIFER ZEPEDA, | ) | NO. CV 15-4054 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) | |

Plaintiff Jennifer Zepeda filed this action on May 29, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 11.) On December 9, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

On March 12, 2012, Zepeda filed an application for supplemental security income alleging an onset date of January 1, 2001.  Administrative Record ("AR") 22.  The application was denied initially and on reconsideration.  AR 22, 61, 72.  Zepeda requested a hearing before an Administrative Law Judge ("ALJ").  AR 85-87.  On April 11, 2013, the ALJ ordered psychological testing.  AR 36, 39.  On October 31, 2013, the ALJ conducted a hearing at which Zepeda and a vocational expert ("VE") testified.  AR 40-52.  On November 8, 2013, the ALJ issued a decision denying benefits.  AR 16-31.  On April 22, 2015, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Zepeda has the severe impairment of borderline intellectual functioning. AR 24. She does not meet a listing. AR 25. She has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but is limited to simple repetitive tasks. AR 27. She does not have any past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform such as hospital cleaner, hand packager and dining room attendant. AR 30-31.

### C. Listing 12.05C

Zepeda contends the ALJ erred by finding that she did not meet or equal Listing 12.05C.

At step three of the sequential analysis, the claimant bears the burden of demonstrating that her impairments are equivalent to one of the listed

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The Ninth Circuit has summarized the three main components of listing 12.05C: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Listing 12.05 requires evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.05. The required level of severity is satisfied when subparagraph A, B, C or D is met. *Id.* Subparagraph C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." *Id.* § 12.00(D)(6)(c).

The ALJ found that Zepeda "does not meet the criteria for the diagnosis ('significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period')." AR 25. The ALJ therefore found it unnecessary to address 12.05C. *Id.* The ALJ reasoned that Zepeda's school records described her impairment as a learning disability and not mental retardation/intellectual disability. The Regional Center diagnosed borderline intellectual functioning and not mental retardation/intellectual disability. With respect to adaptive functioning, the ALJ found that Zepeda's communication skills fell within the borderline range, her daily living skills were in the low normal range, her social skills were in the mildly impaired to borderline range and her motor skills were in the normal range. The ALJ noted that Zepeda was described as "'high functioning.'"[2] AR 25. Although her IQ scores were measured at 65-70, she was able to complete a one-year program in cosmetology even though she did not pass the licensing test. AR 25. No doctor assessed mental retardation/intellectual disability. AR 26.

Alternatively, the ALJ found that Zepeda did not satisfy 12.05C because she did not have an additional impairment that imposed significant work related limitations. The ALJ assessed that Zepeda's diagnosis of depression will not impose significant limitations for at 12 consecutive months. *Id.*

---

[2] The comment about Zepeda being "high functioning" should not be misinterpreted. The comment occurred in the area of safety and was based on her ability to recognize danger and seek help. The Regional Center noted, however, that Zepeda "has to rely on others to ensure her safety due to her inability to put such a plan in place and remember what to do." AR 370.

1    Zepeda correctly argues that the ALJ erred in relying on the absence of a
2    diagnosis of intellectual disability.  *See Christner v. Astrue*, 498 F.3d 790, 793
3    (8th Cir. 2007).  "Section 12.05 does not require a diagnosis or finding of 'mental
4    retardation,' but relies instead on valid IQs in conjunction with other evidence to
5    establish 'subaverage general intellectual functioning.'"  *Gomez v. Astrue*, 695 F.
6    Supp. 2d 1049, 1057-58 (C.D. Cal. 2010).
7    Zepeda's full scale IQ scores in the record were 65 in 2013 and 70 in 2012.
8    AR 350, 391.  The ALJ relied on the fact that school records found Zepeda had a
9    "specific learning disability" as opposed to intellectual disability since she was 8
10   years old.  AR 300, 307, 313, 328; *see also* AR 381.  The term "specific learning
11   disability" in the California Department of Education regulations means "a
12   disorder in one or more of the basic psychological processes involved in
13   understanding or in using language, spoken or written, that may have manifested
14   itself in an impaired ability to listen, think, speak, read, write, spell, or do
15   mathematical calculations, including conditions such as perceptual disabilities,
16   brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia."  5
17   Cal. Code Regs. § 3030(b)(10).  The basic psychological processes include
18   attention, visual processing, auditory processing, sensory motor skills and
19   cognitive abilities such as association, conceptualization and expression.[3]  *Id.*  By
20   contrast, the California Department of Education regulations define the term
21   "intellectual disability" as "significantly subaverage general intellectual functioning,
22   existing concurrently with deficits in adaptive behavior and manifested during the
23   developmental period that adversely affects a child's educational performance."
24   *Id.* § 3030(b)(6).
25   Zepeda's high school Individualized Education Program (IEP) indicates she
26   tested in the bottom 6% for reading (composite), the bottom 10% for math

---

[3] The school records indicate Zepeda has a specific learning disability in the areas of attention, auditory and visual processing.  AR 311.

6

(composite) and bottom .2% for written language (composite). AR 303. She is able to understand short to moderate grade level reading assignments but has difficulty comprehending long reading passages and technical directions. AR 304. She is able to write a single paragraph but has difficulty with multiple paragraphs. AR 305. She makes consistent errors when math problems involve more than two steps. AR 306. Her learning disability in the areas of attention, auditory and visual processing impairs her ability "to retain and generalize information in the general education setting." AR 311. Zepeda had an extended school year based on a "pattern of regression and difficulty retaining knowledge after vacations and school breaks." AR 313.

Similarly, the ALJ relied on the fact that the Regional Center did not find mental retardation/intellectual disability but rather "developmental disorder, borderline intellectual functioning" of unknown etiology.[4] AR 376. Zepeda's "problem-solving abilities are not at age or grade level" and she "was simply unable to perform within the normal range." AR 385. Her reading and spelling skills are at a fifth grade level. Although she can spell simple three and four letter words, she is unable to spell words with more than one syllable. Sentence comprehension is at a fourth grade level and "limited to very simple sentences." AR 386. Although she was able to go to cosmetology school, her "academic abilities are below a fifth grade level and may significantly compromise her ability to master a written test for licensing purposes." *Id.* Her academic percentile rank is no more than 6%. AR 387. The Regional Center concluded that: "[Zepeda] will need assistance in finding and securing competitive employment. She may not read or spell well enough to complete an employment application. Although she has completed a cosmetology program, licensing may prove difficult.

---

[4] A person is eligible for regional center services if he or she has intellectual disability or "disabling conditions found to be closely related to intellectual disability or to require treatment similar to that required for individuals with an intellectual disability." Cal. Welf. & Inst. Code § 4512(a).

[Zepeda] appears to be an ideal candidate for supported employment given her borderline verbal and nonverbal intelligence." AR 387.  Zepeda was referred for supportive employment.  AR 368, 371-72.  She also needed training and other supports "to access public transportation."  AR 369.

In contrast to the California Department of Education, the Social Security regulations do not use the term "specific learning disability."  The Commissioner does not address the ALJ's finding as to subaverage intellectual functioning and does not argue that Zepeda's claim should be evaluated under a different listing.  In this case, it is undisputed that the low IQ scores are valid, and there is no evidence of malingering.  The court concludes that, on this record, the ALJ erred in failing to find significantly subaverage general intellectual functioning initially manifested before age 22.

Zepeda next argues that the ALJ erred in failing to find deficits in adaptive functioning initially manifested before age 22.  The regulations do not define the phrase "deficits in adaptive functioning."  The Commissioner argues that Listing 12.00.C.1 refers to "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  Specifically, "[w]e will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction."  *Id.*

On this record, the ALJ erred in failing to find any deficits in adaptive functioning.  The record indicates that Zepeda is capable of cleaning, shopping, caring for her personal hygiene and using telephones.  On the other hand, the Regional Center records indicate deficits in adaptive functioning.  Zepeda's communication skills were estimated to fall within the borderline range.  She had a difficult time understanding language that is not meant to be taken literally and her academic abilities are below the fifth grade level.  AR 386.  Her daily living

skills were within the low normal range. Zepeda does not drive or use public transportation. *Id.*; *see* AR 379 (inability to learn to drive), AR 246, 255 (difficulty remembering bus routes). Zepeda's social skills fell within the mildly impaired to borderline range. She has only one friend, has never been out on a date and has no hobbies. AR 386-87. Other Regional Center records indicate Zepeda lives at home. She is able to use a microwave but uses the stove with supervision. AR 379. She tends to isolate in her bedroom and does not go out much socially. AR 369, 380. She was referred for supportive employment. AR 371-72. Her stepfather pays her bills. AR 228, 231. A psychologist found that Zepeda appeared younger than her stated age and was passive, childlike and very soft spoken. AR 347.

Finally, Zepeda argues that the ALJ erred in failing to find an additional impairment that imposed significant work related limitations. An impairment imposes a significant work-related limitation "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). After *Fanning*, the Commissioner clarified that the additional impairment must be "'severe'" in order to establish "'an additional and significant work-related limitation of function.'" Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50754 (2000). A finding that the claimant as a severe physical or other mental impairment at step two of the sequential analysis satisfies the third element. *See Rhein v. Astrue*, 2010 U.S. Dist. LEXIS 128615, *26-*27 (E.D. Cal. Nov. 23, 2010).

Zepeda was first diagnosed with a depressive disorder in May 2013. AR 392. She showed evidence of psychomotor slowing, her affect was euthymic and her mood was depressed. AR 390. In addition to intellectual deficits, the psychologist assessed moderate difficulty in responding appropriately to usual work situations and changes in a routine work setting. AR 393. The hearing took

9

place approximately five months later on October 31, 2013. AR 40. The ALJ "anticipate[d] that with treatment, [depression] will not impose significant limitations for at least 12 consecutive months." AR 26. The court concludes that remand is warranted to assess Zepeda's depression and whether there is an additional and significant limitation of function.

### D. Credibility

Zepeda contends that the ALJ erred in assessing credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (citation omitted), *amended* 2015 WL 6684997 (Nov. 3, 2015); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 798 F.3d at 755 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted). In weighing credibility, the ALJ may consider factors including the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling

10

("SSR") 88-13) (quotation marks omitted).[5] The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Zepeda's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her allegations of disability "are not entirely credible" to the extent they are "inconsistent with the residual functional capacity" assessed by the ALJ. AR 28. The ALJ primarily relied on three reasons: (1) the fact that Zepeda expected the Regional Center to help her find a job; (2) Zepeda's activities of daily living; and (3) psychological testing indicating intact memory and adequate attention span. AR 28-29.

Zepeda told the Regional Center that she wanted to work, and the Regional Center found Zepeda appropriate for supportive employment. The ALJ stated that he did not interpret the Regional Center's referral as limiting Zepeda to supportive employment with a job coach. "[R]ather, the Regional Center offered the claimant services within its scope." AR 28.

The ALJ's finding is not supported by substantial evidence. Under California's Lanterman Act, "developmentally disabled persons receive services through providers under contract with a 'regional center.'" *Arc of California v. Douglas*, 757 F.3d 975, 979 (9th Cir. 2014). A regional center is "a diagnostic, counseling, and service coordination center for developmentally disabled persons and their families." 17 Cal. Code Regs. § 54302(a)(54). There is no indication that a regional center simply offers an eligible person any service within its scope. Instead, the regional center is required to prepare an individual program plan

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

11

(IPP) "developed through a process of individualized needs determination." Cal. Welf & Inst. Code § 4646(b)-(c). The IPP includes an assessment of the claimant's capabilities and limitations, and a schedule of the type and amount of services necessary to achieve certain objectives. See *Sanchez v. Johnson*, 416 F.3d 1051, 1064 (9th Cir. 2005); Cal. Welf. & Inst. Code § 4646.5. When developing an IPP for a working age adult, the interdisciplinary team "shall consider the Employment First Policy in § 4868 et seq. *Id.* §§ 4646.5(a)(4), § 4868(a)(2).

Here, the regional center performed an initial evaluation and sent Zepeda for psychological evaluation. After receipt of the pertinent reports, the regional center "determine[d] eligibility for Regional Center services." AR 383. The psychologist performed a comprehensive psychological evaluation including IQ and other testing, behavioral observations, cognitive functioning and adaptive functioning. AR 384-87. The psychologist concluded that Zepeda "appears to be an ideal candidate for supported employment given her borderline verbal and nonverbal intelligence." AR 387. The term "supported employment" means services that are provided by a job coach in order to support and maintain an individual with developmental disabilities in employment. 17 Cal. Code Regs. § 54302(a)(69). Zepeda's IPP indicated that she is referred to New Horizons (NH) for supportive employment, including job development/placement and coaching.[6] AR 368-69. The IPP team concluded she "will need mobility training, aides en route, or other supports to access public transportation safe[l]y." AR 369. Accordingly, the fact that a developmentally disabled adult wants to work at a job is not inconsistent with disability.

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. Here, as discussed above, Zepeda's daily activities

---

[6] Zepeda testified at the hearing that the regional center told her "they were going to help me and put a coach" but that had not happened yet. AR 47.

were not inconsistent with the disability she is alleged to have and were not inconsistent with the Regional Center's assessment of her capabilities. Zepeda could not learn to drive, AR 379, and did not use public transportation because she had difficulty remembering bus routes, AR 246, 255. Her allegations are consistent with the regional center's IPP, which also concluded that she needed help to learn to use public transportation. AR 369. As explained by the regional center, her abilities made her an "ideal candidate" for supportive employment. AR 387. A claimant need not be completely incapacitated to receive benefits. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Lack of objective medical evidence supporting the degree of limitation cannot form the sole basis for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ cites one examining psychologist's report that found intact immediate, recent and remote memory. AR 349. This one report is inconsistent with the remaining reports and her school records. *See, e.g.,* AR 385, 391-92 (finding weak working memory in the bottom percentile). In any event, the ALJ's credibility assessment cannot rest on this factor alone. The ALJ erred in his credibility determination.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 17, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge